UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

Multi-Tech Systems, Inc.,

Plaintiff,

vs.

Gateway 2000, Inc. (f/k/a/ Gateway Inc.); Gateway Companies Inc.; Gateway Direct L.P.; and Gateway.com, L.P.,

Defendants. Civ. No. 00-295(ADM/RLE)

* * * * * * * * * * * * * * * * * * *

Multi-Tech Systems, Inc.,

Plaintiff,

vs.

Dell Computer Corporation, a Delaware Corporation,

Defendant. Civ. No. 00-296(ADM/RLE)

* * * * * * * * * * * * * * * * * * *

Multi-Tech Systems, Inc.,

Plaintiff,

vs.

Compaq Computer Corporation, a Delaware Corporation,

Defendant. Civ. No. 00-297(ADM/RLE)

* * * * * * * * * * * * * * * * * * *

FILED OCT 10 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

33

* * * * * * * * * * * * * * * * * * *

Microsoft Corporation,
a Washington Corporation,

Plaintiff and
Counterclaim Defendant,

vs.

Multi-Tech Systems, Inc.,

Defendant. Civ. No. 00-1412(ADM/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 7th day of October, 2000.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a routine assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motions of the Defendants Gateway 2000, Inc., Gateway Companies, Inc., Gateway Direct, L.P., Gateway.com, L.P. ("Gateway"), Dell Computer Corporation ("Dell"), and Compaq Computer Corporation ("Compaq"), to Stay their respective proceedings or, in the alternative, for a Protective Order to Limit Discovery; and upon the Motion of the Defendant, and Counterclaim Plaintiff, Multi-Tech Systems, Inc. ("Multi-Tech"), to Stay the proceeding involving Microsoft Corporation ("Microsoft"). A Hearing on the Motions was conducted on August 22, 2000, at which time, Compaq appeared by

Robert J. Goldman, Esq.; Gateway appeared by Roger D. Taylor, Esq.; Dell appeared by Willem G. Schuurman, Esq.; Microsoft appeared by David T. Pritkin, Esq.; and Multi-Tech appeared by Ronald J. Schutz, Esq.

For reasons which follow, Gateway, Compaq, and Dell's Motion to Stay, or in the alternative, for a Protective Order is granted in part, and Multi-Tech's Motion to Stay is denied.

## II. Factual and Procedural Background

As outlined in our Minute Order of June 27, 2000, in February of this year, Multi-Tech commenced patent infringement actions against Gateway, Dell, Compaq, and others, alleging that their act of pre-loading a software program, which is marketed by Microsoft, and which is known as "NetMeeting," infringes upon patents held by Multi-Tech. Subsequently, in June of this year, Microsoft commenced a Declaratory Judgment action against Multi-Tech, which seeks an adjudication that Microsoft's "NetMeeting" does not infringe upon Multi-Tech's patents. Given the commencement of Microsoft's lawsuit, Compaq, Dell, and Gateway argued, in June of this year, that their lawsuits should be stayed until the action between Microsoft and Multi-Tech is resolved.

In our previous Minute Order, we explained the crux of the dispute, which led to the prior Motion to Stay, as follows:

> Since the core areas of disagreement, on the patent infringement liability issues, will be, in all likelihood, between Microsoft and Multi-Tech, Compaq, Dell, and Gateway, ask that these actions be stayed until the Microsoft/Multi-Tech litigation is completed. While characterized as a Motion to Stay, in actuality, Compaq, Dell, and Gateway, seek a Protective Order that would focus the pretrial processing of Multi-Tech's claims against them so as to minimize the extent to which they would be obligated to litigate the claims inherent in Microsoft's action against Multi-Tech, as they concede that certain discovery, as to them, would be required by Multi-Tech at least to some extent. So framed, the Motion has undeniable merit. See, e.g., Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990)(under "customer suit" exception, litigation against manufacturer of infringing goods should take precedence over patent owner's suit against customers of the manufacturer); P.S.I. Nordic Track, Inc., 686 F. Supp. 738, 740-41 (D. Minn. 1987)(same).
>
> Unfortunately, Microsoft's Declaratory Judgment action is of such recent origin, that Multi-Tech has not served and filed an Answer, Counterclaim, or other responsive pleading. Therefore, the dimensions of the Declaratory Judgment action are somewhat unsettled, and we decline to now maintain the other cases in abeyance, until those dimensions have solidified. Once the form and scope of the Microsoft/Multi-Tech action is ascertained, we can more responsibly revisit, upon the Motion of any affected party, the issue of streamlining the pretrial processing in each of the respective actions, so as to minimize the cost and expense to all concerned, and to give effect to the command of Rule 1, Federal Rules of Civil Procedure.

Minute Order dated June 27, 2000, at 3-4.

Subsequently, in July of 2000, Gateway, Dell, and Compaq filed another Motion to Stay, ostensibly as a result of this Court's Minute Order. In addition, Multi-Tech filed a Motion to Stay the Microsoft proceeding, in order to facilitate its desire that the Microsoft action be deferred, while the individual claims against Dell, Gateway, and Compaq, are litigated.

III. Discussion

A. The Compaq Defendant's Motion to Stay.

1. Standard of Review. As a Federal District Court, we have the inherent power to stay the proceedings of an action, so as to control our docket, to conserve judicial resources, and to provide for the just determination of cases that pend before us. Landis v. North American Co., 299 U.S. 248, 254-55 (1936); see also, Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir. 1990), cert. denied, 498 U.S. 897 (1990); Webb v. R. Rowland & Co., Inc., 800 F.2d 803, 808 (8th Cir. 1986); Kemp v. Tyson Seafood Group, Inc., 19 F. Supp.2d 961, 964 (D. Minn. 1998). Therefore, the decision to grant such a Stay is one which is vested in the sound discretion of the Court. See, e.g., Bausch & Lomb, Inc. v. Alcon Laboratories, Inc., 914 F. Supp. 951, 953 (W.D.N.Y. 1996); GPAC, Inc. v. D.W.W. Enterprises, Inc., 144 F.R.D. 60, 64-65 (D.N.J. 1992); Emhart Industries Inc. v. Sankyo Seiki Mfg. Co., Ltd., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987).

While the Court's inherent power to manage its docket places this decision within the Court's broad discretion, "[t]he proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 707 (1997). Even if granted, a Stay should be limited in its scope to restrain only those aspects of the case that give rise to the effects justifying its imposition. See, Hines v. D'Artois, 531 F.2d 726, 733 (5th Cir. 1976); Dellinger v. Mitchell, 442 F.2d 782, 787 (D.C. Cir. 1971).

Lastly, when ruling on a Motion to Stay, the Court must weigh the competing interests, including the possible damage of granting a stay versus the hardship or inequity of forcing a case forward. See, Clintec Nutrition Company v. Abbott Laboratories, 1995 WL 228988 *1 (N.D. Ill., April 14, 1995). The Court must consider "whether the stay will result in a simplification or a complication of the issues, proof and questions of law." Id.[1] If a stay would more likely than not delay the district court proceedings without

[1]Additional factors, that often bear on the decision whether to grant a Stay, include: 1) the plaintiffs' private interest in proceeding expeditiously with the civil litigation balanced against the prejudice against the plaintiffs if delayed; 2) the private interests of, and burden on, the defendants; 3) the interests of the Courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest. See, e.g., Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993); see also, American Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937)("In the end, benefit and hardship would have to be set off, the one against the other, and a balance ascertained.").

any countervailing benefit, the Court should proceed with the merits of the case. See, Agar Corp. v. Multi-Fluid Inc., 44 U.S.P.Q.2d 1158, 1159 (S.D. Tex. 1997), citing Toro Co. v. L.R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984).

2. Legal Analysis. Here, the interests of judicial economy, and efficiency, commend the granting of the request by Dell, Gateway, and Compaq, that the pretrial processing of Multi-Tech's claims against them be streamlined, so as to reduce the extent to which they would be required to litigate the claims of infringement inherent in Microsoft's action against Multi-Tech. However, because the presence of Dell, Compaq, and Gateway, may be necessary for Multi-Tech to demonstrate the direct infringement of its patents, we decline to issue a Stay but, instead, opt for the implementation of a Protective Order, that will limit any unnecessary involvement of Dell, Compaq, and Gateway, pending the resolution of the Microsoft Declaratory Judgment action.

According to Compaq, Dell, and Gateway -- and Multi-Tech does not disagree -- if the NetMeeting software program were removed from their computers prior to sale, then their hardware would provide no basis upon which Multi-Tech could allege that they were infringing upon Multi-Tech's products. As noted by Dell, Compaq, and Gateway, Microsoft created the NetMeeting program, and then supplied it to various "box" computer manufacturers, in the form of

computer-readable code.[2] With Microsoft's permission, computer manufacturers such as Dell, Compaq, and Gateway, can install, **without modification**, the NetMeeting program on the computers that they sell in the marketplace. Therefore, the gravamen of Multi-Tech's cause of action is that Microsoft is allegedly infringing Multi-Tech's patents, through the creation, and distribution, of the NetMeeting program to various computer manufacturers, including Dell, Compaq, and Gateway.

Nonetheless, as urged by Multi-Tech, the presence of the NetMeeting software, standing alone, does not implicate the computers, that are manufactured by Dell, Compaq, and Gateway, as infringing devices. Rather, it is NetMeeting's interaction with the various basic computer components -- such as modems, sound cards, speakers, speaker jacks, and microphones -- that allows for the simultaneous transmission of computer, and voice or video data, over the same internet line, which infringes upon the device that is allegedly covered by the Multi-Tech patents. As such, Multi-Tech argues that

[2]All the parties concede that, because of the method that is used to transfer the NetMeeting software to the various computer manufacturers, the basic documents, expertise, and other information, which relates to the performance of the NetMeeting software, and its interaction with basic "box" computer components, is exclusively within the possession of Microsoft. Dell, Compaq, and Gateway, all represent that they are unable to explain the inner workings of the NetMeeting program, and would be unable to substantively respond to any inquiries on that subject, other than to refer the inquiries to Microsoft.

the presence of Compaq, Dell, and Gateway, is essential to their ability to establish direct infringement, by means of the sale of computers which contain the NetMeeting software, and which possess the ability to integrate that software with the computer components that are required if the computer is to be able to perform functions that are purportedly protected by the Multi-Tech patents.[3]

Given the preliminary, and undeveloped state of the Record, we cannot, and need not, conclusively determine whether Microsoft's creation and distribution of the NetMeeting software, standing

---

[3]Multi-Tech also argues that the presence of Dell, Compaq, and Gateway, is vital for it to be able to obtain damages based on the sale of the computer systems, by these "box" manufacturers, instead of damages based on the sale of the NetMeeting software, alone. We have serious doubts as to the accuracy of this contention. Patent damages are governed by Title 35 U.S.C. §284, which provides, in relevant part, as follows:

> Upon finding for the claimant the court shall award the claimant **damages adequate to compensate for the infringement**, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

[Emphasis added]; see also, Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 504-507 (1964). This statutory language makes plain that the determination of the proper amount of damages, for patent infringement purposes, will not differ merely because the particular defendants, who are named in the lawsuit, are different. However, we need not, and do not decide this issue at this time, but will await a more fully developed Record, and legal briefing, if the issue should properly arise in the future. We do recognize, and Dell, Compaq, and Gateway, do not contest, that evidence of the sales of their purportedly offending computers, is relevant to Multi-Tech's claim for damages.

alone, is sufficient to constitute an assertedly direct infringement of the Multi-Tech patents. As argued by Multi-Tech, although it has asserted both direct and indirect infringement claims against Microsoft, the indirect infringement aspect of its allegations represent only a fraction its overall claim. Rather, according to Multi-Tech, the overarching focus of its claim against Microsoft involves allegedly contributory infringement.

Given the sparsity of the Record now presented, we have no basis upon which to discredit Multi-Tech's assertion that Dell, Compaq, and Gateway, are parties whose inclusion is crucial to Multi-Tech's ability to prove the direct infringement of the devices that are assertedly covered by the Multi-Tech patents. In addition, because this Motion is based primarily on the parties subjective characterizations of the systems, and products, that are necessary in order to infringe upon that which is assertedly protected by the Multi-Tech patents, we cannot blithely accede to Multi-Tech's suggestion that Microsoft's creation and distribution of the NetMeeting Program is only sufficient to establish liability as a contributory infringer, rather than as a direct infringer.

At this juncture, we are satisfied that the infringement claims against Dell, Compaq, and Gateway, are derivative of any claims of infringement that Multi-Tech may have against Microsoft. Since Dell, Compaq, and Gateway, do no more than load the NetMeet-

ing program into their computers, and are not privy to the programs inner workings, the significant confrontation involves the competing patent claims of Multi-Tech and Microsoft. On this Record, Dell, Compaq, and Gateway, are mere observers to that battleground but, if either Multi-Tech, or Microsoft, should be the successful combatant, on that plane, then Dell, Compaq, and Gateway, will be derivatively affected.

Given this context, three alternative approaches are presented. First, we could grant the Stay that Dell, Compaq, and Gateway, request, which could delay the progress of Microsoft's action against Multi-Tech, and Multi-Tech's Counterclaims against Microsoft. Second, we could consolidate the actions into one proceeding, but that would have the effect of potentially requiring Dell, Compaq, and Gateway, to engage in discovery, and related Motion practice, as to issues that are not germane to their liability exposure, and Multi-Tech rejected a consolidated approach, by refraining from joining Dell, Compaq, and Gateway, as Third-Party Defendants in Microsoft's action against Multi-Tech. Lastly, we could issue a Protective Order which would allow Multi-Tech to discover against Dell, Compaq, and Gateway, and vice versa, but only as to those issues arising from the incorporation, by Dell, Compaq, and Gateway, of the NetMeeting program in their respective computers. Such an approach will minimize unnecessary discovery

against Dell, Compaq, and Gateway, without impairing Multi-Tech's legitimate discovery interests as to them.[4]

---

[4]As the parties have addressed, under the "consumer suit" doctrine, Court's generally favor a Stay of the action against the distributors of an infringing product, pending the outcome of a Declaratory Judgment action against the manufacturer of the offending product, who is the "true defendant in the customer suit." Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990); see also Emerson Electric Co. v. Black & Decker, 606 F.2d 234 (8th Cir. 1979). Here, Dell, Compaq, and Gateway, argue that they are mere customers, and distributors, of Microsoft's product and, therefore, the doctrine should apply so as to warrant the grant of a Stay.

In response, Multi-Tech argues that the customer suit exception does not apply in this case, and that, as a result, the first-filed rule, which gives priority to the earliest filed suit, mandates that a Stay not be granted. See, Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989); P.S.I. Nordic Track, Inc. v. Great Tan, Inc., 686 F. Supp. 738, 740 (D. Minn. 1987). According to Multi-Tech, computer manufacturers such as Dell, Compaq, and Gateway, assemble computers with a number of components, in addition to the NetMeeting software, that are alleged to directly infringe Multi-Tech's patents. Therefore, Multi-Tech avers that a variety of claims, counterclaims, defenses, and potentially infringing devices, are encompassed by its suit against Dell, Compaq, and Gateway, that are not encompassed by the Microsoft action.

"[I]n those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve **all** charges against the customers in the stayed suit, including liability for damages." Kahn v. General Motors Corp., supra at 1081 (emphasis added). Here, the undeveloped state of the Record leaves us without an ability to determine whether a Declaratory Judgement in favor of Microsoft would resolve all of the claims that Multi-Tech has asserted against Dell, Compaq, and Gateway. If, as urged by Multi-Tech, discovery in these related areas of potential infringement is warranted, Multi-Tech can present that showing and the Protective Order, that we envision for the Dell, Compaq, and Gateway actions, will accommodate such (continued...)

In contrast to the approach we adopt, we find no merit to Multi-Tech's assertion, that the interests of justice require a Stay of Microsoft's action against Multi-Tech, while Multi-Tech litigates the derivative claims against Dell, Compaq, and Gateway. Necessarily, Microsoft would be the subject of Third-Party subpoenas in the actions that Multi-Tech has commenced against Dell, Compaq, and Gateway, and inexcusable inefficiencies and expense would unavoidably result. Accordingly, we deny the Motion to Stay Microsoft's action against Multi-Tech, and the related Counter-claims that Multi-Tech has asserted against Microsoft. Accordingly, pursuant to Rule 26(c), Federal Rules of Civil Procedure, we will issue a Protective Order, to be negotiated between the parties in each of these proceedings, to as to "protect [them] from annoyance, embarrassment, oppression, or undue burden or expense * * *." Id.

To assist in those negotiations, we offer the following guidance as to those areas of discovery that, in our preliminary view, Dell, Gateway, and Compaq, should be subjected, over an above the requisites of Rule 26(a)(1):

---

[4](...continued)
focused discovery. Absent a fuller Record, we cannot dispositively resolve this issue, but we are satisfied that a Protective Order requiring focused discovery will best effectuate the parties' competing, legitimate concerns.

> 1. They should be required to identify the computers they respectively market which contain the NetMeeting program, or any other specific device that, as alleged by Multi-Tech, infringes upon Multi-Tech's patents.
>
> 2. They should be required to confirm, or deny, that they have participated in any assertedly infringing activity, as to Multi-Tech's patents, apart from the incorporation of the NetMeeting software.
>
> 3. They should be required to detail the interaction between their respective hardware, and Microsoft's NetMeeting software.
>
> 4. They should be required to document the number of computers, which incorporated the NetMeeting program, that they have respectively manufactured and sold, and the profits derived therefrom.
>
> 5. They should be required to detail any and all legal and factual defenses to the claimed infringement that Multi-Tech has alleged.

Of course, upon a proper showing, we can be persuaded that the requisite discovery should be broader, or narrower, but we leave, in the first instance, the scope of discovery to Multi-Tech, Dell, Compaq, Gateway, and Microsoft. While formally not a party to these proceedings, Microsoft may well be subject to a subpoena, from one or more of the parties, and the parties may wish to employ Rule 30(b)(6) depositions, of an appropriate representative of Microsoft, so as to minimize the individualized demands that the three actions could impose upon Microsoft, or any other party. Similarly, the parties may wish to schedule Rule 30(b)(6) deposi-

tions, in each of the respective actions by Multi-Tech against Dell, Compaq, and Gateway, to most effectively discover relevant information, after the deployment of appropriate paper discovery. Obviously, any such Protective Order is subject to revision upon a proper showing and, in order to advance these actions to Trial, we direct that the parties immediately "meet and confer" so as to present a Protective Order, for the Court's review, forthwith. Any impasse in the drafting effort should be drawn to this Court's attention with dispatch.

NOW, THEREFORE, It is --

ORDERED:

1. That the Motion of Dell, Compaq, and Gateway, to Stay their respective proceedings, or in the alternative, for a Protective Order to Limit Discovery [Docket No. 26, Civ. No. 00-295; Docket No. 20, Civ. No. 00-296; Docket No. 22, Civ. No. 00-297] is GRANTED, in part, as detailed in the text of this Order.

2. That Multi-Tech's Motion to Stay [Docket No. 5, Civ. No. 00-1412] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE